# APPEAL OF ELIZABETH D. HOWE, ET AL.

### [ESTATE OF GEORGE H. HOWE, DECEASED.]

FROM THE DECREE OF THE COURT OF COMMON PLEAS NO. 4 OF PHILADELPHIA COUNTY.

Argued April 10, 1889—Decided May 6, 1889.

[To be reported.]

1. In ascertaining the intention of a testator, the words he has chosen must be read according to their plain and ordinary meaning, and the interpretation must be in conformity with the meaning of the words, rather than with some supposed meaning of the testator.

2. While it is to be presumed that a testator does not intend to die intestate, yet an heir can be disinherited only by an express devise, or by a necessary implication of such strong probability that an intention to the contrary cannot be supposed.

(a) A last will provided: "After the payment of all my just debts and funeral expenses, I do order that all my property consisting of bonds and mortgages, ground-rents, stocks and personal effects in the state of Pennsylvania, be sold," the proceeds to be divided among certain legatees.

3. There being no ambiguity in the language employed, there was no occasion to resort to interpretation; and, under the plain meaning of the words, the testator's real estate in Pennsylvania did not pass by the foregoing provisions of his will: Baker's App., 115 Pa. 590.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and McCOLLUM, JJ.

No. 325 January Term 1889, Sup. Ct.; court below, Nos. 169, 170 June Term 1886, C. P. No. 4, M. L. D.

On September 5, 1887, writs of levari facias were issued

upon judgments in favor of the city of Philadelphia against George H. Howe, for registered taxes, upon which writs certain real estate of the defendant in the 24th ward of Philadelphia was sold. Out of the proceeds of sale the judgments were satisfied and, the balance being paid into court, *Mr. Henry V. Massey* was appointed auditor to make distribution thereof.

At the hearing before the auditor, the balance of the fund was claimed by Elizabeth D. Howe and others, a sister and children of a deceased brother and sister, who showed that said George H. Howe had died on March 14, 1881, testate, leaving the claimants to survive him as his heirs at law, and providing by his will dated March 10, 1881, and duly admitted to probate, as follows:

" After the payment of all my just debts and funeral expenses, I do order that all my property consisting of bonds and mortgages, ground-rents, stocks and personal effects in the state of Pennsylvania, be sold, and after deducting my funeral expenses and debts as aforesaid, I do order that the remaining sum be equally divided among the children of my sister, Elizabeth D. Howe, the children of my adopted daughter, Elizabeth Supplee, and the children of my adopted daughter, Sarah Ann Shaffer; all the children living at my decease to have share and share alike. I also give and bequeath to my dear sister's daughter Jane, all my property in Pendleton county, state of Kentucky, and I hereby nominate and appoint Jeremiah T. Wilson, of Philadelphia, state of Pennsylvania, executor of this my last will and testament."

The auditor, under the authority of Marshall's App., 2 Pa. 388; Barr's Est., 2 Pa. 428; Rewalt v. Ulrich, 23 Pa. 391; Postlethwaite's App., 68 Pa. 477; 1 Jarman on Wills, 733; 1 Greenl. Ev., § 287, admitted testimony as to the amount and kind of property of which the decedent died seised, the condition of his family, their circumstances, the relative situations of the members to him, and his relationship to the parties claiming the fund, but held that he did not think this evidence had any effect upon the will; that such evidence was not evidence of intention, but was simply evidence of facts and circumstances which might assist in the interpretation of a doubtful will; that a will must be construed according to the intention of the testator, and by this is to be understood, " not what the

testator meant, but what is the meaning of his words:" Hancock's App., .112 Pa. 532; that the meaning of the words used by the testator was plain and intelligible; and, citing Baker's App., 115 Pa. 590; and Sponsler's App., 107 Pa. 95, he was of the opinion that the will under consideration did not pass the real estate the sale of which produced the fund for distribution, and therefore awarded the fund to the claimants as the heirs at law of the deceased.

To this report of the auditor, Ancil E. Howe and others, legatees under the will, excepted, that the auditor erred in reporting that the real estate in question did not pass by the will of the testator.

The exceptions filed having been argued, the court, WILLSON, J., on January 5, 1889, delivered the following opinion and decree:

The controversy now before the court arises in the distribution of the proceeds of a sheriff's sale of real estate, and is between the heirs at law of one George H. Howe, and those who claim to be devisees, or legatees, under his will. The whole question turns upon the construction to be given to the will.

The testator provided in his will as follows:

      *     *     *     *     *     *     *     *

The premises sold by the sheriff, as will be seen by reference to the will as just quoted, were not expressly enumerated among the items of " property " which the testator directed to be sold and the proceeds divided among the persons described. The question to be decided, however, is whether the words " all my property," which the testator ordered to be sold, are to be regarded as including all his estate, real and personal, in the state of Pennsylvania, or whether they are to be considered as limited and restrained in their operation to the items of property which are described in the clause, " consisting of bonds, mortgages, ground-rents, stocks and personal effects." If the former construction shall be applied, then the exceptions filed on behalf of the devisees or legatees must be sustained; if the latter construction is the true one, the heirs-at-law are entitled to the fund, and the exceptions must be dismissed.

Counsel of the heirs have called the attention of the court

to the familiar doctrines that, in a doubtful case of interpretation, the heir is to be favored, and that, as a general rule, the intention of a testator is to be gathered from the terms of the will alone.   We do not propose, in disposing of this case, to depart from the line which the law has laid down upon those points.   Taking the language of the testator, we desire to ascertain what he expressed as his intention in the matter in dispute.

It will be observed that, in ordering the sale to be made after his death, he sets out by using the comprehensive phrase " all my property."   These words would unquestionably cover the real estate, out of which the fund in question arose, if used alone: Rossetter v. Simmons, 6 S. & R. 452; Zerbe v. Zerbe, 84 Pa. 147.  A later clause in the will, however, shows that the testator did not intend to cover his entire estate by the words just referred to, for by that clause he gave some property in the state of Kentucky to a " sister's daughter Jane."   With that exception, there is no disposing provision in the will besides that now under consideration.   Read as a whole, it seems clear that the testator meant to dispose of his whole estate by the directions which he gave.

The question at issue will be solved in favor of the exceptants, if the clause beginning with the words " consisting of " and containing an enumeration of items, can properly be regarded, not as the principal, substantive, designation of the property which the testator directed to be sold, but merely an imperfect attempt on his part to enumerate the subject-matter which made up or constituted " all my property."   We are of the opinion that this is the proper interpretation to be given to this part of the will.   If the testator had intended to direct that merely the enumerated items of property should be sold, he would naturally have said " I do order that all my bonds, mortgages, etc., be sold."   The use of the words " all my property," at the outset, indicates that his thought was upon the whole of such portion of it as he had in mind at that time. An inspection of the whole will shows that he was disposing of property in two states, Pennsylvania and Kentucky, and we think the first clause should be read as directing a sale of " all my property in the state of Pennsylvania, consisting of," etc. He had evidently divided his estate into two portions, for the

purposes of his will. *All* his property in the state of Pennsylvania included the items enumerated, and others besides. If the clause containing the items of property were so constructed, or had such a relation to the principal phrase, as to warrant the idea that it was intended to restrict the latter, or to narrow its operation. then the gift could not be carried beyond the extent of the restriction. But we do not so regard it. On the contrary, we are of opinion that the testator, who evidently wrote the will himself, and used few artificial terms, after employing the comprehensive words, "all my property," to express his main thought, set about an unnecessary statement of items, which, from one cause or another, he did not make complete. We think this conclusion is strengthened by the inherent probability that the testator had no intention of dying intestate as to any portion of his property. There is a close analogy between the method of interpretation which we have employed and the principle which is embodied in the maxim, falsa demonstratio non nocet, etc., which is familiar to all readers of the law.

The cases of King v. George, L. R. 5 Ch. D. 627, and Dean v. Gibson, L. R. 3 Eq. 713, resemble this in its essential features. In the former, the words " all I have power over, namely, plate, linen. china," etc.. were held to cover many other articles of personal property than those enumerated. The same construction was applied in the other case to the words, " personal property consisting of money and clothes." It is true that both of these cases related only to the disposition of personal property, but we do not see that the principle to be enforced, if it would in any case not apply to real estate, can be different in this case. in which it appears that the testator mixed both real and personal property in his disposition, and directed that the property, which he intended to cover, whatever it was, should be converted, sold, and its proceeds divided. In the case of In re Goodyear, 4 Jur. N. S. 1243, however, substantially the same doctrine was applied to real estate.

We have not been able to find any adjudication in our own state, which bears any close resemblance to the case in hand, or which furnishes a principle for the determination of its peculiar features. The auditor appears to have been controlled by Baker's App., 115 Pa. 590. The testator, in the will before

the court in that case, said: "I leave and bequeath all my property (as stated in my father's will) to my wife." It was decided, against the widow's claim, that she took under the will only such property as the testator had the power, under his father's will to direct. It will be seen, however, by a reading of the opinion of the court, that the decision was based upon the ground that the son's will was to be regarded only as an exercise of the power which his father conferred upon him, and therefore, that the testator actually made no will as to his own estate. We do not, therefore, regard Baker's Appeal as an authority against the view which we have expressed.

For the reasons stated, we sustain the exceptions which have been filed to the report of the auditor.

A formal decree of distribution having been entered in accordance with the foregoing opinion, the claimants took this appeal, specifying that the court erred in sustaining the exceptions to the auditor's report and in awarding the fund to the legatees under the will of the testator.

*Mr. Edwin Saunders Dixon*, for the appellants:

1. There being no ambiguity in the terms of the will, extraneous circumstances cannot be permitted to affect its construction: Sponsler's App., 107 Pa. 95; Baker's App., 115 Pa. 593. In cases between the heir and the devisee, the question is not whether the heir can prove that the testator did not intend to pass real property, but whether the devisee can prove that he did. The proof lies on the devisee. The heir at law ought to be preferred, unless the intention of the testator seems exceedingly plain: Grim's App., 89 Pa. 335; France's Est., 75 Pa. 220. An heir can be disinherited only by express devise or necessary implication, and such necessary implication cannot arise unless there be an actual gift to some other definite object, with a clear intent to pass the estate into another line of succession: Rupp v. Eberly, 79 Pa. 141; Hitchcock v. Hitchcock, 35 Pa. 393; Cowles v. Cowles, 53 Pa. 175; Bender v. Dietrick, 7 W. & S. 284; Zerbe v. Zerbe, 84 Pa. 147.

2. The real estate in Pennsylvania was not included by the terms of the will. And it is respectfully suggested that if the premises in question were not expressly enumerated, there is

no right in any one now to conclude that the testator set about an unnecessary statement of items, because he did not enumerate all and give them to certain persons by name. The testator so clearly and expressly designating what he ordered to be sold, it would be a gross violation of the meanings of words to say that his real estate was included without being mentioned: Roe d. Helling v. Yeud, 2 N. R., B. & P., 214; Doe d. Bunny v. Rout, 7 Taunt. 79; Bramley v. Collins, 88 N. C. 605; Champion, Ex parte, 1 Busb. Eq. 250; Baker's App., 115 Pa. 590.

*Mr. Edwin O. Michener,* for the appellees:

1. The guiding rule in the construction of a will, is the rule laid down in all text books and in the decisions of all the courts, that there shall be no presumption of intestacy, if the words of the will can be made to cover the whole: Raudenbach's App., 87 Pa. 51; Ferry's App., 102 Pa. 207. An examination of this will discloses an intention on the part of the testator to part with all his property. He owned property in two states. In Kentucky, only a farm; in Pennsylvania, besides the house and the lots of ground, he was possessed of a ground-rent, a mortgage and a small amount of personal property. In each case, he used the same expression, to wit: " All my property."

2. But in the devise of his Pennsylvania property, he attempts an enumeration of it, but does it in a way that indicates that he used the words, " consisting of," as if they meant " including." All the later cases hold that where there is a general devise, which is full and perfect in itself and is followed by descriptive words, the descriptive words will not be allowed to restrict the general devise: Smyth v. Smyth, L. R. 8 Ch. D. 561; Dean v. Gibson, L. R. 3 Eq. 713; King v. George, L. R. 4 Ch. D. 435; s. c. L. R. 5 Ch. D. 627; Campton v. Campton, 16 Q. B. 183; Clark v. Preston, 2 La. Ann. 580; Burnsides Succession, 35 La. Ann. 708; La. Rongatel v. Mann, 63 N. H. 472.

OPINION, MR. JUSTICE GREEN:

The will of the testator is very brief. The substance of its dispositions is contained in the following words: " After the

Opinion of the Court.

payment of all my just debts and funeral expenses I do order that all my property consisting of bonds, mortgages, ground-rents, stocks and personal effects in the state of Pennsylvania be sold and after deducting my funeral expenses and debts as aforesaid I do order that the remaining sum be equally divided among the children of my sister Elizabeth D. Howe, the children of my adopted daughter Elizabeth Supplee, and the children of my adopted daughter Sarah Ann Schaffer . . . . . I also give and bequeath to my dear sister's daughter Jane all my property in Pendleton county, state of Kentucky." The testator died seised of specific real estate in Pennsylvania which was sold for taxes after his death, and on the distribution of the proceeds of such sale the present contention arises: the question is, did the testator die testate or intestate as to such real estate?

It can scarcely be questioned that literally and upon the ordinary reading of its very terms, the clause relating to property in Pennsylvania has a limited signification. The words " all my property consisting of bonds and mortgages, ground rents, stocks and personal effects in the state of Pennsylvania" include so much of the testator's property in Pennsylvania as comes within the designated description. They do not mean all the testator's property in Pennsylvania. To give them that meaning we must strike out as surplusage the remaining words of the clause after the words " all my property." We have no right to do this, because the testator has inserted them, and it is not within the function of the courts to make a will produce a certain meaning by eliminating operative words which the testator has written into it. It is his undoubted right to do as he pleases with his own, and it is the business of the courts to enforce the wishes he has expressed. We are therefore not at liberty to read this will literally, as we would read it if the descriptive words which follow the words " all my property " were left out. We must declare the testator's meaning with all those words in.

The auditor in the court below held that the testator died intestate as to the real estate sold for taxes, but the learned court thought differently and held that it passed by the terms of the will. Such a ruling can only be sustained upon the theory that it is necessary in order to effectuate the testator's

intention. But in ascertaining such intention, the words he has chosen must be read according to their plain and ordinary meaning, and the interpretation must be in conformity with the meaning of the words rather than with some supposed meaning of the testator. We can see no ambiguity in the words of this will, and therefore have no occasion to resort to rules of interpretation which are intended only for the solution of ambiguous language. One of these rules chiefly invoked in the present case, is, that a testator is to be presumed as intending not to die intestate; but another rule of quite equal, and perhaps still greater force, is, that the heir is not to be disinherited except by express words or necessary implication. Thus in Rupp v. Eberly, 79 Pa. 141, we said: "The maxim is imbedded in the common law that an heir can be disinherited only by express devise or necessary implication, and that implication has been defined to be such a strong probability that an intention to the contrary cannot be supposed: 1 Jarman on Wills, 465. That this rule has been uniformly recognized in Pennsylvania is proved by all the cases in which the point has been discussed:" Bender v. Dietrick, 7 W. & S. 284.

It is argued with great earnestness for the appellees that the words, "all my property" must be construed as evincing an intention to dispose of all the testator's property in Pennsylvania both real and personal. If there were no other words of description, of course this conclusion would be inevitable, but the mere fact that there are other words, which being literally read, do restrain the generality of those words and limit them to certain individuated species of property, is itself proof that they were not intended to have their general meaning; else why insert the additional words? We cannot say they were uselessly and unmeaningly written into the will. On the contrary we find them there and must, if we can, enforce them because they are there. Moreover, we have quite recently declared the meaning of the same words in a similar collocation. In Baker and Wheeler's App., 115 Pa. 590, the testator directed as follows: "I leave and bequeath all my property (as stated in my father's will) to my wife Mary S. Wheeler." We held there was no ambiguity in these words, and that although the words, "all my property," were used

by the testator, their meaning must be limited to certain property of which he had a power of disposal by his father's will. We regard this case as entirely analogous to the present. The immediate collocation in both cases limits and restrains the application of the words in their general sense.

In the case we are now discussing, this conclusion is strongly enforced by other considerations. Thus the word "ground-rents" indicates an interest in real estate, and this is given by express mention and the maxim expressio unius est exclusio alterius becomes applicable. But, in addition to this, the testator adds as part of the words which complete the description of the property given, the words, "and personal effects," thus plainly showing that while he was including, and manifestly intending to include, all property of a certain class, to wit, "personal effects," he intended nothing more. Surely, if he had intended to include also all "real estate" he would have said so in this immediate connection, or at least would not have said "and personal effects," only. Still further is this construction enforced by the consideration that the property enumerated is not given in specie, but is to be sold and the proceeds to be divided. Hence if we hold that the language in question includes all the testator's real estate, we must hold that a power to sell all the testator's real estate is given by this will. To the creation, and for the execution of such a power as this, there is not a single appropriate word in this will. No power to sell real estate is expressly given, except as to the ground rents; no allusion even is made to the lot and buildings on Forty-first street, or to the lot of ground on Race street, Philadelphia; much less is any express power given to the executor or to any one, to sell them, and if we find such a power to exist under this will we must do it entirely by inference and without any appropriate words whatever. We are not authorized to take such a liberty. Testamentary powers to sell real estate are of the utmost importance. They are a vital part of the title to be passed to the purchaser, and should be clearly expressed and not be left to rest only upon a doubtful inference.

Recurring now to the disposing clause of the will, let us repeat it in the light of the foregoing suggestions: "I do order that all my property consisting of bonds and mortgages, ground-rents, stocks and personal effects in the state of Pennsylvania,

be sold," etc.    The plain and ordinary meaning of these words is that the testator directs that so much of his property as consists of bonds and mortgages, ground-rents, stocks and personal effects, in the state of Pennsylvania, be sold, and the proceeds divided in a certain way.    As to any other property he may own in Pennsylvania there is no direction.    He takes especial care to order the sale of all his personal property, and one kind of real estate.    Other kinds of real estate are not included, and that circumstance is evidence they were not intended to be included; but all kinds of personal estate are included by express mention, and this is most persuasive evidence that he could not have intended to include specific pieces of real estate not mentioned or embraced within any clearly apt words of general description.    When the testator desires to dispose of his real estate in Kentucky, he speaks with perfect plainness thus: "I also give and bequeath to my dear sister's daughter Jane, all my property in Pendleton county, state of Kentucky." If he had desired to make a similar disposition of his property in Pennsylvania we must infer he would have used similar words.    The fact that he did not, is evidence that he did not so intend, and as this view of the case conforms to our view of the other aspects of the will, we are obliged to hold that the real estate in question, not having been devised away from his heirs by the will, passed to them under the intestate law, and therefore they take the fund arising from its sale.

> The decree of the court below is reversed at the cost of the appellees, and the record is remitted with instruction, that the fund in court be distributed according to the report of the auditor.