# Sarah L. Keene's Estate.

1. A bequest was to " my niece Ellen * * * $30,000, to be invested in ground-rents, &c., the interest to be paid to her only, or her power of attorney, whether married or single, during her life, and after her death to her children, if any, absolutely, but if she dies without issue, the principal to go to her brothers; * * * but if she marries without my consent, or after my death, to any person whom I did not approve during my life," the devise to be void : *Held*, to be an active trust.

2. The niece and two others were appointed executors ; the niece only survived the testatrix: *Held*, that she being executrix might retain the bequest as trustee, without giving security to those in remainder under the Act of April 17th 1869.

February 17th 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Appeal from the Orphans' Court of *Philadelphia* : In the estate of Sarah Lukens Keene, deceased: No. 49 of July Term 1874.

The decedent died on the 11th of May 1866, having never been married. She left a will dated November 1843, and proved June 9th 1866, by which she made a number of specific devises and bequests, and also the following provisions :—

" I bequeath to my dear niece, Ellen Keene, whom I have educated, the sum of thirty thousand dollars, to be invested in ground-rents, or bonds and mortgages on real estate, the interest to be paid to her only, or her power of attorney, whether married or single, during her life, and after her death to her children, if any, absolutely ; but if she dies without issue, the principal to go to her brothers, Henry and James, namely, the aforesaid investment of thirty thousand dollars in ground-rents, and bonds and mortgage,

the interest only for their uses; but to their children, lawful issue, absolutely. But if she marries without my consent, or after my death, to any person whom I did not approve during my life, then this devise shall be null and void, and she shall only receive ten thousand dollars, subject to the same investment of ground-rents, or bond and mortgage, the interest only to be paid to her alone, or her power of attorney, and after her death to her children absolutely. I have made this clause, not from any fear of its *probable* necessity, but from prudence and precaution. If she dies without lawful issue, this sum 'to go to her brothers in the same manner as specified above in the larger sum.

"I give and bequeath to my nephew, Henry Edgar Keene, ten thousand dollars, to be invested in ground-rents, or bonds and mortgages on real estate, the interest only to be paid to him during his natural life; if he marries and has children, to his lawful issue, absolutely; but if he dies unmarried this sum to be divided between his two, or one surviving brother and sister, subject to the same investment, and receiving the interest only of the same during their lifetime.

"It is my will, that my executors shall have power to sell the large lot, situated on Chestnut street, &c. * * * or any part of my real estate not already devised to pay my legacies; but not until two years have elapsed from the time of my death, unless the property shall have attained its full and just value, and the stocks in which much of my personal estate is vested, have attained also *par value.*

"The residue of my estate, real and personal, I give and be-queath, to my dear and affectionate niece, Ellen Keene, subject to the same conditions as my legacy of the thirty thousand dollars specified in a former part of this instrument, the principal to be invested in ground-rents or in the bank stock considered safe, but preferable in bond and mortgage on real estate, the interest to be enjoyed by her during her life, the principal to devolve to her children, lawful issue absolutely; if she dies unmarried, she has power to devise it, to which ever of her brothers she *will* consider most worthy to inherit her bequest and mine, the interest only to them, to their children, lawful issue absolutely."

She named three executors, one of whom was Ellen Keene; she only survived the testatrix.

Beside the real estate particularly mentioned in her will, Miss Keene, the testatrix, died seised also of a lot of ground in Sunbury, Northumberland county, which John Lukens had in the year 1785 conveyed to his daughter, Tacy Lennox, who'devised the residue of her estate, including this lot, to Miss Keene.

On the 17th day of May 1866, "S. B. W. Mitchell and Ellen Keene Mitchell, his wife, late Ellen Keene, the sole executrix, &c., of Sarah Lukens Keene, the said S. B. W. Mitchell joining in the

execution by virtue of his marriage with the said Ellen Keene," conveyed this lot for the consideration of $1000. The deed recited the devise to Miss Keene, the provision in her will giving her executors power to sell any part of her real estate, &c.

Ellen Keene was married in the lifetime of the testatrix but after the date of her will, to S. B. W. Mitchell. Henry Keene also was married before her death. Neither Ellen nor Henry have had any children.

The testatrix left at her death the following next of kin: The above-named Ellen Keene (Mitchell) and Henry E. Keene, who were children of her brother, Jesse L. Keene, deceased; Lawrence St. Clair Keene and others, children of James B. Keene, deceased, a nephew of decedent; Jesse L. Keene and Edwin J. Keene, children of Lennox Keene, deceased, another nephew.

Lawrence St. Clair Keene and Edwin J. Keene petitioned the Orphans' Court, setting forth that they had a contingent interest in the bequests to Mrs. Mitchell and Henry E. Keene, and prayed for a citation to Mrs. Ellen Mitchell, requiring her to settle an account of her administration as executrix of Miss Keene.

The petition further prayed that the accountant and Henry E. Keene respectively be required to give security for the contingent interests of the petitioners under the will of the testatrix.

The accountant, amongst other things, answered that the petitioners "have no standing to ask security from her as executrix, or individually, until they have judicially established their contingent interest, and shown waste and mismanagement."

The executrix accordingly filed an account; it did not include the proceeds of sale of the Sunbury lot.

The account was referred to Joseph A. Clay, Esq., as auditor, to examine and adjust and report distribution.

The auditor made corrections in the account, and amongst other things surcharged the accountant with $1000, the proceeds of the Sunbury lot.

He found the balance in her hands, being the proceeds of both real and personal estate, to be $50,563.44. He reported that this should be distributed "as residue to Mrs. Ellen Keene Mitchell for her life, according to the will of the testatrix, and upon her giving the security required by the Act of Assembly."

The accountant filed exceptions to the report; one was that the accountant had been surcharged with $1000, the proceeds of the Sunbury lot; another that the auditor held "the accountant liable to give security for assets that she holds as executrix subject to the limitations and trusts of the will of her testatrix."

In delivering the opinion of the Orphans' Court on these exceptions, Allison, P. J., said:—

"The most important exception to the report of the auditor raises the question whether under the will of the testatrix a trust

exists as to the bequest of $30,000 and the residue of the estate to Ellen Keene Mitchell, and as to a bequest of $10,000 to Henry E. Keene, who stood respectively in the relationship of niece and nephew to the testatrix.    The auditor holds that the executrix had no trust to perform, and that she must pay or transfer the securities belonging to the estate to the legatees respectively, upon their giving the security required by the Act of Assembly in case of payment of principal to a legatee for life.    This conclusion is founded chiefly on Parker's Appeal, 11 P. F. Smith 478. * * *

"We think it may be affirmed that the broad doctrine that a trust to invest and keep invested a fund to receive and pay income or profit to another, constitutes an active trust in Pennsylvania, and that it has not been overthrown by the case of Parker's Appeal.    In the case before us we have the sum of $30,000 and the residue of the estate given to the executors, of whom Ellen Keene Mitchell was one, first to be invested in ground-rents or in bonds and mortgages; second, the interest to be paid during her life to Ellen Keene *only*, or to her attorney, whether she married or remained single; and after her death to her children absolutely.    If the testamentary disposition of this portion of the estate ended at this point, it could not be rightfully claimed ' that the form of the bequest in Parker's Appeal is substantially and indeed almost identically the same as that employed by Miss Keene.'    It would yet be wanting in a direction to invest the legacy in specified securities, and to keep it so invested for the life of the first taker, and with the power given to her to dispose of the residue by will in case she did not marry.    When to this is added the duty upon the part of the executors to hold the property and pay the same to contingent devisees in case Ellen Keene should die unmarried, the income to be paid for life to said devisees, with remainder to their children absolutely, we think that it presents the case of a bequest, which is not substantially nor identically the same as Parker's Appeal.    But when to this is added the fact that there is a sole and separate use for Mrs. Mitchell during her marriage, the divergence from Parker's Appeal becomes more apparent, the interest is directed to be paid to her only, or to her attorney, whether married or single. * * * That a separate use was intended cannot, we think, be questioned; the income was to be paid to *her only*, or upon her power of attorney.    This brings it within the general principle that whenever it appears that the wife is intended to have property for her sole use that intention will be carried into effect by a court of equity.    In a conveyance made directly to a wife any words which sufficiently show the intention to secure a use to her, or to separate for her benefit the use from the title must also indicate an intention to exclude the husband.    There is no particular form of words necessary for the creation of such an

interest; the question is one of intention, and is to be solved by the established rules of interpretation. * * *

" It is not necessary to create a separate interest in a wife that a trustee should be interposed between her and her husband. Equity will, if it is requisite to support the intention, turn the husband into a trustee for the wife. * * *

" Sarah L. Keene appointed three executors of her will, of whom the accountant was one, and she is now the only survivor; but this does not, as we have seen, prevent the separate use vesting nor is it material that the bequest is directly to the legatee. * * *

" We sustain the trust as to Mrs. Mitchell for the following reasons :—

" 1. It is an active trust for the life of Mrs. Mitchell.

" 2. It is necessary to hold the fund or securities for those who are contingently in remainder in several degrees.

" 3. There is, we think, a clear intention to create a separate use for Mrs. Mitchell; the use having been established in expectation that she would marry, which is shown not only by first portion of the bequest, but by the subsequent reduction of the legacy from $30,000 to $10,000, if she married without the approval of the testatrix.

" For the reason given we uphold the bequest to Mrs. Mitchell as a live trust. If there was nothing more than the performance of active duties by the executors, to invest and to keep invested the fund, to collect and pay over income to her, we think this trust cannot be overthrown. * * *

" We are also of the opinion that a trust exists as to the legacy of $10,000 to the nephew, Henry E. Keene, because the duties imposed are such as to constitute it an active trust. It was incumbent on the executors to invest in ground-rents and mortgages, to pay the interest only to Henry for life; the remainder is to his children absolutely. Henry is married and without children; it is not certain that he will not have issue. It will hereafter become a question as to what is to become of this legacy if he should not leave issue, there being an alternative remainder to brothers and sisters; the brothers are dead, but have left each a widow and children surviving."

As to the $1000, proceeds of the Sunbury lot, the judge said :—

" This question will have to go back to the auditor, for if the exceptants did not agree that he should bring this claim into the account, it has no proper standing in it, and it may be a question whether the Orphans' Court can in any event take jurisdiction of it, as the land was not sold under a testamentary power or by order of the court.

" If we are right upon the question of the existence of a trust, there can be no claim by remaindermen, to have the fund paid to them, upon their giving security. The exceptions to the report

[Keene's Estate.]

are sustained in accordance with the views above expressed, and it is referred back to the auditor for re-adjustment upon the principles above set forth, * * * and the prayer of the petitioner refused."

The auditor, in his second report, found in accordance with the principles of the opinion of the court, that the balance in the hands of the accountant was $41,274.44, and that it was to be held by the executrix as trustee, as decided by the court.

The petitioners filed exceptions to the report, which were overruled by him and by the Orphans' Court, and the report was confirmed.

The petitioners appealed to the Supreme Court. Amongst others, they assigned the following errors :—

2. Distributing the principal of the life legacies of $30,000 and the residue, and of $10,000 to the executrix as trustee, instead of to the life legatees, Mrs. Mitchell and Henry E. Keene respectively, on their giving security for the protection of the appellants' interests therein.

3. Distributing the principal of said legacies to the executrix, as trustee, without security from the executrix as trustee for life for the protection of the appellants' interests therein.

4. Distributing said legacies without providing security for the protection of the appellants' interests therein.

5. Not increasing the principal of the residuary legacy with the amount of $1000, the proceeds of the sale of the Sunbury lot, and in not surcharging the executrix with these proceeds.

*G. L. Crawford* and *B. H. Brewster*, for appellants.—Mrs. Mitchell and Henry E. Keene took life estates in the bequests which were distributable immediately : Parker's Appeal, 11 P. F. Smith 478 ; Austin Keene's Appeal, 14 Id. 268. The appellants being owners of a contingent interest in the legacies (Austin Keene's Appeal, *supra*), can require the executrix, being legatee of a previous interest, to give security under Act of April 17th 1869, sect. 1, Pamph. L. 70 ; May 17th 1871, sect. 1, Pamph. L. 269, 1 Bright. Purd. 449, 452, pl. 214, 231.

*E. K. Price*, or appellee, as to the trust being active, cited Barnett's Appeal, 10 Wright 392 ; Bacon's Appeal, 7 P. F. Smith 504 ; Graham *v.* Graham, 16 Id. 477 ; Earp's Appeal, 25 Id. 119 ; Wilson's Estate, 2 Barr 329 ; Barclay *v.* Lewis, 17 P. F. Smith 316.

Judgment was entered in the Supreme Court March 6th 1876,

PER CURIAM.—We are of opinion there was an active trust in the executors of Miss Keene's will, to invest and pay over the interest only to Ellen Keene (now Mrs. Mitchell) for life, and the *principal* to her children at her death, and if none, then to the

[Keene's Estate.]

persons named to take in that contingency. The trust in the executors was necessary to effectuate this purpose, and the corpus of the estate being in them, charged with the duty of investment and payment, it was necessarily active. Mrs. Mitchell, being herself an executrix, was not bound to give security for that which came into her hands, and cannot be required to give security to those in remainder.

The sum of $1000 raised by the sale under the testamentary power of the property in Sunbury must be accounted for as part of the estate held in trust. But as the appellants have no immediate interest in its use, it can be accounted for hereafter in another account, and this is so ordered. With this modification, the decree of the Orphans' Court is affirmed, with costs, and the appeal is dismissed.